IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| vs. | ) | Criminal No. 19-354 |
| | ) | |
| DAVEION SANDERS, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION

I.      Introduction

Pending before the court is a motion for reconsideration of detention order (ECF No. 90) filed by counsel on behalf of defendant Daveion Sanders ("Daveion"). The government filed a response in opposition to the motion (ECF No. 95). Neither party requested a hearing in response to an email inquiry from the court about whether either party wanted a hearing. After review of the submissions, the court determines that a hearing is not necessary because there is no additional evidence being offered. The motion is ripe for disposition.


II.      Background

Daveion is charged in the indictment at Crim. No. 19-354 along with his brother and co-defendant Deandre Moses Sanders ("Deandre"). Daveion is charged with 5 felony offenses: (1) at count 1, conspiracy (with persons known and unknown) on July 11, 2019, to possess with intent to distribute 500 grams or more of cocaine and quantities of oxymorphone, in violation of 21 U.S.C. § 846; (2) at count 2, possession with intent to distribute 500 grams or more of cocaine and quantities of oxymorphone on July 11, 2019,

in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(ii) and (b)(1)(C); (3) at count 4,

possession of a machinegun on July 11, 2019, in violation of 18 U.S.C. § 922(o)(1); (4) at

count 5, possession of 2 firearms in furtherance of a drug trafficking crime on July 11,

2019, in violation of 18 U.S.C. § 924(c)(1)(A)(i); and (5) at count 6, possession of

firearms which were not registered to them in the National Firearms Registration and

Transfer Record on July 11, 2019, in violation of 26 U.S.C.  5861(d).[1]  The charges stem

from items found that day during a search of the upstairs apartment at 115 Walker

Avenue in Butler, Pennsylvania.

On December 3, 2019, the magistrate judge held an evidentiary hearing with

respect to pretrial detention of both Sanders brothers, at which their sister, Lateisha

Canier ("Canier"), testified.  The hearing was continued on December 17, 2019.

Detective James Wintruba ("Wintruba") was called as a witness by the government and

Marybeth Busbee ("Busbee") testified on behalf of Daveion.  The government also

introduced exhibits 1-10, which consisted of cell phone recordings and photographs of

Daveion.  The court reviewed the transcripts of those hearings (ECF Nos. 34, 92) and the

exhibits.  Deandre Moses Sanders does not challenge his continued pretrial detention.

Daveion's primary argument is that Busbee is willing to serve as his custodian.

Busbee is a registered nurse and works at the VA hospital.  She retired from the Air Force

in 2010 as a major.  She has a 22-year-old son who recently graduated from college and

lives with her.  Busbee testified that she had a romantic relationship with Daveion from

August 2018 through March 2019.  In July 2019, Busbee learned that Daveion had been

arrested and began speaking with him again.

---

[1] Count 3 of the indictment names only Deandre Moses Sanders.

Busbee testified that, during their relationship, Daveion lived on Walker Avenue in Butler, Pennsylvania.  Tr. 48.  She visited him at that residence, although he stayed with her most of the time while they were in a relationship.  Busbee testified that after their breakup in March 2019, Daveion returned to the home on Walker Avenue.  Tr. 49. During the period of their relationship, Busbee provided Daveion's food and living expenses and was unaware he had any lawful employment.  Tr. at 49.

Busbee testified that when she came to court on December 17, 2020, she had no hesitation acting as custodian for Daveion and having him live in her home upon his release.  After seeing the videos and photos presented by the government during the hearing, Busbee expressed some hesitation about acting as custodian, but ultimately stated she would do it.  Tr. at 46.  Daveion's motion for reconsideration reiterates that Busbee offered him a place to live and has an interest in assuring that he complies with all conditions of release (ECF No. 90 at 3).

The magistrate judge found that the rebuttable presumption of detention applies. The magistrate judge found that the 5 crimes charged against Daveion were serious; the weight of the evidence against him was strong; and neither Canier nor Busbee would be an appropriate custodian.  She also found by clear and convincing evidence that no conditions of release would reasonably assure the safety of others.  Tr. at 66-69.  The magistrate judge did not directly rule on his risk of flight, but did question "if he were to be released, where he would go."  Tr. at 67.

III.   Legal Analysis

The court's standard of review of a magistrate judge's denial of pretrial detention

is de novo. United States v. Delker, 757 F.2d 1390, 1394 (3d Cir.1985). The structured system of the Bail Reform Act, 18 U.S.C. § 3141 et seq., regarding the release or detention of a defendant before trial seeks to ensure that the interests of the defendant and the public are carefully considered and contemplated before release or detention is ordered. The court is charged with holding a hearing to determine whether there exists "any condition or combination of conditions set forth in [18 U.S.C. § 3142(c)] that will reasonably assure the appearance of the [defendant] as required and the safety of any other person and the community." 18 U.S.C. § 3142(f). Section 3142(c)(1)(B) of the Bail Reform Act sets forth a nonexclusive list of conditions that a court may impose upon granting a defendant's motion for pretrial release. If the court determines no sufficient condition or combination of conditions exists, however, the court may order that a defendant be detained without bail pending trial.

A.   **Rebuttable Presumption**

In this case, a rebuttable presumption applies that no conditions or combinations of conditions will reasonably assure the appearance of defendant as required or the safety of the community. Section 3142(e)(3) provides:

> Subject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed . . . *(A) an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 et seq.).*

18 U.S.C. § 3142(e)(3) (emphasis added).

There is probable cause to believe Daveion committed offenses that fall within the category of offenses listed in § 3142(e)(3)(A) because a grand jury returned an indictment

charging Daveion at counts 1 and 2, respectively, with conspiracy and possession with intent to distribute 500 grams or more of cocaine and a quantity of oxycodone. The statutory mandatory minimum penalty at each count (for a first offense) is 5 years and the maximum statutory penalty is 40 years.[2]  At the hearings before the magistrate judge and in his motion for reconsideration, Daveion did not contest the application of the rebuttable presumption to this case.  Thus, subject to rebuttal by defendant, it is "presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3142(e).

A defendant may offer evidence to rebut the presumption that no condition or combination of conditions will reasonably assure the safety of the community if defendant is released pending trial. A defendant must produce only "some evidence" to rebut the presumption set forth in § 3142(e). See United States v. Jessup, 757 F.2d 378, 384 (1st Cir. 1985). The quantum of evidence required to rebut the presumption is not high; rather, the defendant need only come forward with credible evidence conflicting with the presumption. Id. at 383.  When a defendant produces conflicting evidence, the presumption does not disappear.  The rebutted presumption retains evidentiary weight.  See United States v. Carbone, 793 F.2d 559, 560-61 (3d Cir. 1986) (per curiam); United States v. Dillon, 938 F.2d 1412, 1416 (1st Cir. 1991); United States v. Palmer-Contreras, 835 F.2d 15, 18 (1st Cir. 1987) (per curiam).

If the defendant rebuts the presumption, the burden of persuasion remains with the government, which bears the burden of proving that the defendant presents either a risk of

---

[2] The firearm offense at count 5 has a mandatory minimum prison term of 5 years, which must be consecutive.  If convicted on all charges, Daveion faces a statutory minimum of 10 years in prison.

flight or a danger to the community.  United States v. Murrietta, No. CR 20-218, 2021 WL 130654, at *6 (W.D. Pa. Jan. 14, 2021), reconsideration denied, No. CR 20-218, 2021 WL 322181 (W.D. Pa. Feb. 1, 2021).  The government must prove that detention is necessary to ensure public safety by clear and convincing evidence, and must prove risk of flight by a preponderance of the evidence. Id. § 3142(f)(2); United States v. Himler, 797 F.2d 156, 161 (3d Cir. 1986).

**B.      The § 3142(g) factors**

In evaluating defendant's evidence to rebut the presumption, the court must consider the four factors set forth in § 3142(g) in determining whether pretrial detention is warranted. United States v. Mercedes, 254 F.3d 433, 436 (2d Cir. 2001) (to determine whether the presumption of dangerousness has been rebutted, the court should consider the factors set forth in § 3142(g)). The four factors are:

> (1)  the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2)  the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including--
>
>> (A)  the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>> (B)  whether, at the time of the current offense or arrest, the person was on probation, on parole, or

on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

### C.    The *Accetturo* Factors

The Third Circuit Court of Appeals has explained: "[A]t some point due process may require a release from pretrial detention or, at a minimum, a fresh proceeding at which more is required of the government than is mandated by section 3142." United States v. Accetturo, 783 F.2d 382, 388 (3d Cir. 1986). The court instructed that "due process judgments should be made on the facts of individual cases, and should reflect the factors relevant in the initial detention decision, such as the seriousness of the charges, the strength of the government's proof that defendant poses a risk of flight or a danger to the community, and the strength of the government's case on the merits." *Id.* The court must also consider "such additional factors as the length of the detention that has in fact occurred, the complexity of the case, and whether the strategy of one side or the other has added needlessly to that complexity." *Id.*

Daveion did not raise the length of his detention as a ground for reconsideration of pretrial release. The court takes judicial notice that he has been detained since December 2019 (approximately 18 months) and that due to the COVID-19 pandemic, the conditions of his detention have been more onerous than anticipated. The court will, therefore, sua sponte consider the Accetturo factors along with the § 3142(g) factors to determine whether Daveion should continue to be detained pending trial.

**D.      Risk of Flight**

The government argues that Daveion should remain in custody because he is a flight risk.  "The purpose of a Section 3142(e) risk of flight determination ... is to secure the appearance of the accused at trial." United States v. Himler, 797 F.2d 156, 161-62 (3d Cir. 1986) (citing United States v. Maull, 773 F.2d 1479 (8th Cir. 1989) (risk of flight shown by prior attempt to leave the country in order to flee prosecution)); United States v. Vortis, 785 F.2d 327 (D.C. Cir. 1986) (risk of flight shown by possession of fraudulent passports and a planned trip to Liberia).  Here, there is no evidence that Daveion ever attempted to leave the country, to flee prosecution or secure a fraudulent passport or planned a trip to a country from which he could not be extradited.

Daveion contends that Busbee's willingness to act as a custodian mitigates the risk of flight.  One of the conditions that may be imposed under the Bail Reform Act is that the defendant: "remain in the custody of a designated person, who agrees to assume supervision and to report any violation of a release condition to the court, if the designated person is able reasonably to assure the judicial officer that the person will appear as required and will not pose a danger to the safety of any other person or the community." 18 U.S.C. § 3142 (c)(1)(B)(i).  The court agrees with the magistrate judge that Busbee is not an appropriate custodian, for several reasons: (1) she expressed some hesitation at the hearing about acting in that capacity after seeing the government's evidence; (2) she is employed as a nurse at the VA Hospital and would be unavailable to monitor Daveion's activities while she is working; and (3) their romantic relationship ended in March 2019, over two years ago.  In sum, there is no evidence in the record that Busbee is able to exert sufficient influence and control over Daveion's behavior to reasonably assure the court that

he will appear as required and not pose a danger to the community.[3]

The court may consider a defendant's ties to the district in which the case is pending.  In Murrietta, the court explained:

> As to community ties, it is appropriate to consider whether a defendant has ties to the district where the prosecution is pending. See United States v. Bucio, Crim. No. 5:17-055-DCR, 2019 WL 4397334, at *3 (E.D. Ky. Sept. 13, 2019) (the defendant's lack of any community, financial, family or employment ties to the district where prosecution was pending weighed in favor of revoking release order); United States v. Villegas, No. 3:11–CR–28, 2011 WL 1135018, at *7 (E.D. Tenn. Mar. 25, 2011) ("[A]lthough the defendant has ties with the community in which he lives in California, the defendant has no ties with this District, and the Court may consider this fact.") (citing United States v. Townsend, 897 F.2d 989, 995 (9th Cir. 1990) (finding that "community" embraces ties to the community in which the charges are brought and the community in the United States to which the defendant has ties)); United States v. Rivera, 90 F. Supp. 2d 1338, 1343 (S.D. Fl. 2000) (observing that a court should consider a defendant's ties to the community in which he faces prosecution). In this case, Defendant has no ties whatsoever to the Western District of Pennsylvania where this case is pending.

Murrietta, 2021 WL 130654, at *9; accord United States v. Frazer, No. CR 19-110, 2020 WL 2404893, at *4 (E.D. Pa. May 12, 2020) (rejecting defendant's argument that he has strong community and familial ties to Arizona and concluding that his lack of ties to the district in which the case was pending increased his risk of nonappearance).

In this case, as in Murrietta, Daveion is charged with serious drug and firearm offenses and has no employment or family ties to the western Pennsylvania area. Daveion's mother and sister live in California and Deandre remains in custody.  The government presented evidence of Daveion holding large amounts of cash and $36,000 was seized during the search, which would have provided him the means of flight.  In

---

[3] The court also agrees with the magistrate judge that Canier, who lives in California, would not be an appropriate custodian, due to her full-time job caring for her paralyzed mother and her own children, and her lack of recent contact and knowledge about her brothers' lives.  Tr. 68.

<u>Murrietta</u>, however, the defendant also made frequent trips to Mexico.  There is no evidence of foreign travel by Daveion.

Although a close call, the court does not find that the government proved by a preponderance of the evidence that Daveion presents a risk of nonappearance at trial.

E.   **Danger to the Community**

Daveion argues that he does not pose a danger to the community because he: (1) has no known history of violence or involvement in the adult criminal justice system; (2) during the year-long investigation of Deandre's drug dealing, there was no reference to Daveion's presence in the Walker Avenue apartment or Daveion's involvement in drug trafficking; and (3) there is no forensic evidence indicating that Daveion handled the firearms or drugs recovered in the search or was aware of their presence.

As explained previously, because Daveion is charged with a controlled substance offense with a maximum penalty of 40 years of imprisonment, a rebuttable presumption applies that no conditions or combinations of conditions will reasonably assure the appearance of defendant as required or the safety of the community. 18 U.S.C. § 3142(e)(3).  If the presumption is rebutted, the government has the burden to prove Daveion's dangerousness by clear and convincing evidence.  The court addresses the § 3142(g) factors in making that determination.

1.  Nature and circumstances of the instant offense

Daveion was indicted by the grand jury and charged with conspiracy and possession with intent to distribute a large amount of cocaine and a quantity of oxymorphone, and possession of multiple firearms, including a machinegun recovered from the ceiling of what the government believes to be Daveion's bedroom. The drugs and firearms were recovered

10

during a search of the apartment at 115 Walker Avenue.

This factor weighs in favor of defendant being detained pending trial.

### 2. Weight of the evidence

Daveion contends there is no evidence tying him to that address. Daveion also argues that there is no "forensic" evidence tying him to the drugs and firearms recovered during the search. Although he did not expand this point, he presumably intends to argue a lack of fingerprints or other evidence of actual possession. The apartment was meticulously clean and neat and the firearms and drugs were not in plain view. The cocaine was above the drop ceiling in the kitchen near the refrigerator. The pills were in cans, Ajax containers and water bottles with false bottoms located in various parts of the apartment. Tr. 8, 35.

Daveion may be convicted based on evidence that he possessed the items by himself or jointly with Deandre. His possession of the seized items may be actual or "constructive." United States v. Bell, 418 F. App'x 115, 117 (3d Cir. 2011) ("The possession is called constructive when a person does not have direct physical control over something, but can knowingly control it, and intends to control it through some other person."). As discussed below, the court concludes the government presented substantial evidence that Daveion lived at the apartment and exercised sufficient dominion and control over the drugs and firearms charged in the indictment.

The lease was only in Deandre Sanders' name, but the apartment had two bedrooms, both of which appeared to be occupied by a male. Tr. 9. Officers recovered a current bill from Century Link addressed to Daveion at 115 Walker Avenue, Apartment 2. In addition, Busbee testified that Daveion lived at the Walker Avenue apartment. Items

marked with indicia for Deandre were in one bedroom, and the machinegun was recovered from the ceiling above the bed in the other bedroom.  A jury could reasonably conclude that it was Daveion who used that other bedroom.

On the day of the search, the officers observed Daveion exit the door that leads to the upstairs apartment, sit down on the porch and smoke a cigarette.  Tr. 7.  He was the only person at the apartment when agents executed the search warrant.  Videos recovered from Daveion's phone showed him inside the Walker Avenue apartment with large amounts of cash.  Another video showed Daveion and Deandre firing guns together.

In sum, this factor weighs in favor of defendant being detained pending trial.

### 3. History and characteristics of Daveion

The history and characteristics of Daveion show no gainful employment and no ties to the western Pennsylvania area.  He had a juvenile probation violation, but no details are available because the record was destroyed.   Wintruba testified that based on his consultation with Los Angeles gang experts, Daveion's tattoos showed that he was affiliated with a gang in Los Angeles, California, and was engaged in "flocking," i.e., participating in crime outside the gang's geographical area and bringing the money back to the gang.  Tr. 20-21.  The videos of Daveion with large amounts of cash, despite no lawful employment, support an inference of involvement with narcotics trafficking.

On balance, this factor weighs in favor of defendant being detained pending trial.

### 4. Nature and seriousness of the danger

The final factor is the nature and seriousness of the danger posed by Daveion's

release.  Safety of the community is implicated not only by violence, but also by narcotics trafficking.  In cases involving drug offenses, the danger to the community is the likelihood that the defendant will, if released, traffic in illicit drugs.  United States v. Perry, 788 F.2d 100, 111 (3d Cir. 1986).  The involvement of firearms, particularly a machinegun, amplifies the nature and seriousness of the danger.  Drugs and guns are a dangerous combination and pose a significant threat to the community.  United States v. Oliver, Crim. No. 16-40, 2016 WL 1746853, at *9 (W.D. Pa. May 3, 2016) ("Of course, the utilization of firearms in furtherance of drug trafficking poses a significant threat of violence.").

The charges in this case involve large amounts of cocaine, oxymorphone, and multiple dangerous weapons, which pose a clear and serious threat to the safety of the community.   This factor weighs in favor of pretrial detention.

> 5.    Length of the Detention, The Complexity of the Case and Whether the Strategy of One Side or the Other Added Needlessly to that Complexity

"The length of the detention is critical due to the 'crucial liberty interest at stake.'" United States v. Gatto, 750 F. Supp. 664, 675 (D.N.J. 1990) (quoting United States v. Suppa, 799 F.2d 115, 120 (3d Cir. 1986)). On the other hand, "'the length of a detention period will rarely by itself offend due process.'" United States v. Hodge, No. CR 2016-0009, 2018 WL 1123866, at *8 (D.V.I. Feb. 23, 2018) (quoting United States v. Orena, 986 F.2d 628 (2d Cir. 1993)).  Pretrial detention periods of 41, 33 and 32 months have been found to be constitutional.  Id. (citations omitted).  Daveion has been detained, to date, for approximately 18 months.

The case is not unduly complex.  As the court explained in denying Daveion's motion for a bill of particulars, the charges arise from the items recovered during a search

on a single day (ECF No. 66).  Daveion and Deandre are the only defendants.

The delay in resolution of this case is primarily attributable to Daveion.  His counsel filed numerous motions to extend the deadline for filing pretrial motions and stop the Speedy Trial Act (ECF Nos. 27, 35,44,50,63,73, 88).  The government consented to the motions and the court granted the motions.  Daveion's pretrial motions are now due on or before May 24, 2021.  The court notes that Deandre also filed numerous requests for extensions of time.  The court does not believe that the delay was needless and recognizes the difficulties caused by the COVID-19 virus in preparing the case and communicating with detained defendants.

Under these circumstances, the court cannot conclude that the length of time Daveion has been detained violates due process or constitutes a compelling reason for his pretrial release.  United States v. Harris, Crim. No. 09-305, 2011 WL 1660573, at *6 (W.D. Pa. May 3, 2011) (due process violation did not arise from the defendant's pretrial detention of 19 months where the majority of the delay was caused by requests for extension of time to file pretrial motions).

IV.    Conclusion

Daveion failed to overcome the presumption of detention in this case.  Even if the presumption was rebutted, it retains evidentiary value and the government provided clear and convincing evidence about each of the § 3142(g) factors to indicate that Daveion poses a danger to the community.  The court was not persuaded by a preponderance of the evidence that he poses a flight risk.  The Accetturo factors do not overcome the considerations in favor of detention.  The court cannot conclude that Busbee or Canier

would be an appropriate custodian or that the imposition of additional conditions will adequately protect the safety of the community. In summary, even if Daveion rebutted the presumption of detention, there was clear and convincing evidence adduced in this case to show that he poses a danger to the community because of his involvement with illegal drugs and dangerous firearms.

For the reasons set forth above, the motion for reconsideration of detention (ECF No. 90) will be DENIED.

An appropriate order follows.

April 27, 2021

BY THE COURT:

/s/ Joy Flowers Conti
Joy Flowers Conti
Senior United States District Judge